HEIFNER ET AL., APPELLANTS, *v.* BRADFORD ET AL.; WATERS ET AL., APPELLEES.

[Cite as Heifner *v.* Bradford (1983), 4 Ohio St. 3d 49.]

(No. 82-456—Decided March 23, 1983.)

*Messrs. Kincaid, Cultice & Geyer* and *Mr. R. William Geyer,* for appellants.

*Messrs. Berry, Owens & Manning, Mr. Kenneth F. Berry* and *Mr. William M. Owens,* for appellees.

CELEBREZZE, C.J. This case involves a controversy between independent competing claims of ownership to the oil and gas rights in a particular tract of land. For purposes of this decision, appellants are the purported owners of the oil and gas rights while appellees are the undisputed owners of the surface land. The question involved is one of first impression in this state and deals exclusively with the operation of R.C. 5301.47 through 5301.56, otherwise known as the Ohio Marketable Title Act. The issue presented by this appeal is whether appellees, who have an unbroken chain of title of record of forty years or more, have a marketable record title even though appellants' competing interest arose from an independent chain of title recorded during the forty-year period subsequent to appellees' root of title.

At the outset, the Marketable Title Act sets forth several definitions ger-

mane to the instant cause. R.C. 5301.47(A) defines "marketable record title" as a "title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title * * *." A "root of title" is defined in subsection (E) as "that conveyance or other title transaction in the chain of title of a person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. * * *" Subsection (F) defines "title transaction" as "any transaction affecting title to any interest in land, including title by will or descent * * *."

R.C. 5301.48 provides that one "who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest * * * subject to the matters stated in section 5301.49 of the Revised Code."

In relevant part, R.C. 5301.49 states:

"Such record marketable title shall be subject to:

"* * *

"(D) Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording * * *."

Appellants' root of title is the 1916 deed from Elvira Sprague and her husband to Fred H. Waters which reserved to the grantors the oil and gas rights in the land. Appellees' root of title is the 1936 conveyance from Fred H. Waters and his wife to Charles B. Waters, Emma M. Waters, Sarah K. Waters, and William H. Waters which failed to mention the reservation of oil and gas rights. Consequently, unless subject to R.C. 5301.49, appellees hold a marketable record title to the oil and gas rights, as well as title to the surface land, by virtue of having an "unbroken chain" of record title for over forty years which extinguishes prior claims and interests, including that of appellants. R.C. 5301.47(A) and 5301.48.

The Act defines a "title transaction" to include the passage of "title by will or descent." Thus, the 1957 conveyance of the oil and gas rights which passed under the terms of Elvira Sprague's will must be considered a "title transaction" under R.C. 5301.49(D).

Appellees argue that we should construe R.C. 5301.49(D) to require that a title transaction under that section arise from the same chain of title as that under which there is claimed to be a marketable record title. For the reasons to follow, we feel the proper construction should be otherwise.

Ohio's Marketable Title Act is taken primarily from the Model Marketable Title Act.[2] In fact, R.C. 5301.49(D) is virtually identical to Sec-

---

[2] The Model Marketable Title Act was first proposed in Simes & Taylor, The Improvement of Conveyancing by Legislation (1960).

tion 2(d) of the Model Act.[3] This being the case, we are convinced that the General Assembly and the drafters of the Model Act intended that a title transaction under R.C. 5301.49(D) and Section 2(d), respectively, may be part of an entirely independent chain of title.

In Simes & Taylor, Model Title Standards (1960) 32, the drafters of the Model Act proposed comprehensive model title standards to accompany the Model Act. Standard 4.10 states:

"The recording of an instrument of conveyance subsequent to the effective date of the root of title has the same effect in preserving any interest conveyed as the filing of the notice provided for in § 4 of the Act. (See § 2[d] of the Model Act.)"

Perhaps more significant is the comment to the above standard which provides that, "[t]his standard is operative both where there are claims under a single chain of title and where there are *two or more independent chains of title." Id.* (Emphasis added.)

Moreover, the Ohio Standards of Title Examination drafted and adopted by the Ohio State Bar Association have embraced an identical approach. See 55 Ohio Bar No. 19 (May 10, 1982), at page 763.

Hence, we are satisfied that R.C. 5301.49(D) ought to be construed in the manner that Simes and Taylor, as drafters of Section 2(d) of the Model Act, intended.[4] Accordingly, a "marketable title," as defined in R.C. 5301.47(A) and 5301.48, is subject to an interest arising out of a "title transaction"

---

[3] Bayse, Clearing Land Titles (1970) 378, Section 174.

[4] Appellees contend, however, that under the present grantor-grantee indexing system, in order to locate title transactions in an independent chain of title, the title examiner will have to search the title to its origin and then forward to discover such transactions. It is appellees' position that the purpose of the Act is to limit title searches to forty years.

The approach taken by the court of appeals and advanced by the appellees is not without support. See Barnett, Marketable Title Acts — Panacea or Pandemonium? 53 Cornell L. Rev. 45, 54-56 (1967). However, we are left unpersuaded by Professor Barnett's analysis. Initially, Barnett concedes his approach is contrary to that of the drafters of the Model Act [Barnett, *supra,* at page 89, fn. 122] and, further, Barnett views the purpose of marketable title acts solely to shorten title examinations. *Barnett,* at page 91.

We are not inclined to view the purpose of the Marketable Title Act so narrowly. The Supreme Court of Florida in *Miami v. St. Joe Paper Co.* (Fla. 1978), 364 So. 2d 439, 442, aptly stated that the purpose of marketable title acts is three-fold:

"The Marketable Record Title Act is a comprehensive plan for reform in conveyancing procedures. * * *

"The Marketable Record Title Act is also a statute of limitations in that it requires stale demands to be asserted within a reasonable time after a cause of action has accrued. * * *

"The Marketable Record Title Act is also a recording act in that it provides for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has only himself to blame if his interest is extinguished. The legislature did not intend to arbitrarily wipe out old claims and interests without affording a means of preserving them and giving a reasonable period of time within which to take the necessary steps to accomplish that purpose." See, also, *Semachko v. Hopko* (1973), 35 Ohio App. 2d 205 [64 O.O.2d 316].

under R.C. 5301.49(D) which may be part of an independent chain of title.[5] Further, the effect of RC. 5301.49(D) is identical to that obtained by the filing of a preservation notice. R.C. 5301.51 provides for the preservation of interests by the filing of a notice of claim during the forty-year period. As a result, the recording of a "title transaction" under R.C. 5301.47(F) and 5301.49(D) is equivalent to the filing of a notice of claim during the forty-year period as specified in R.C. 5301.51 and 5301.52.[6]

Thus, the 1957 conveyance under the terms of Elvira Sprague's will was a "title transaction" within the meaning of R.C. 5301.49(D), and appellants' interest was not extinguished by operation of the Marketable Title Act.[7] Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment.

---

[5] Facing the same issue, other courts have reached the conclusion we reach today. See, *e.g., Kittrell* v. *Clark* (Fla. App. 1978), 363 So. 2d 373.

[6] This precise conclusion was reached by the Supreme Court of Oklahoma in *Allen* v. *Farmers Union Co-Operative Royalty Co.* (Okla. 1975), 538 P. 2d 204, 209, in interpreting similar provisions of Oklahoma's Marketable Record Title Act.

We do recognize, as a practical matter, the difficulty faced by title examiners in locating these title transactions in a common title examination. We note that the General Assembly has mandated a "Notice Index" by which notices under R.C. 5301.51 are indexed under the description of the real estate. R.C. 5301.52. It would seem consistent to similarly require such an indexing procedure of at least the title transactions falling under R.C. 5301.49(D). See Webster, The Quest for Clear Land Titles — Making Land Title Searches Shorter and Surer in North Carolina via Marketable Title Legislation, 44 N.C.L. Rev. 89, 108-109 and 122 (1965). However, that is in the nature of a legislative determination beyond the scope of our consideration.

[7] The 1957 title transaction took place only twenty-one years from appellees' root of title, obviously within the forty-year period.