TOTH, APPELLANT, *v.* BERKS TITLE INSURANCE CO. ET AL., APPELLEES.

[Cite as Toth *v.* Berks Title Ins. Co. (1983), 6 Ohio St. 3d 338.]

(No. 82-1444—Decided August 31, 1983.)

*Messrs. Holder & Schiavone* and *Mr. William P. Holder, Jr.,* for appellant.

*Messrs. Roderick, Myers & Linton, Mr. Robert F. Orth* and *Mr. Frederick S. Corns,* for appellees.

CLIFFORD F. BROWN, J. Interpretation of the Ohio Marketable Title Act is nearly a matter of first impression. This court has addressed the issue of the marketable record title of a particular parcel of property in only one other case, *Heifner* v. *Bradford* (1983), 4 Ohio St. 3d 49. In *Heifner,* Chief Justice Celebrezze expressed that this court was satisfied that R.C. 5301.49(D), dealing with the recording of land use restrictions under the Marketable Title Act, "ought to be construed in the manner that Simes and Taylor, as drafters of Section 2(d) of the Model Act, intended."[1] Therefore, this court again looks to Simes and Taylor[2] for direction in this case.

Simes and Taylor explain in Model Title Standards that, "[t]he recording of an *instrument of conveyance* subsequent to the effective date of the root of title has the same effect in preserving any interest conveyed as the filing of the notice provided for in § 4 of the Act. (See § 2 (d) of the Model Act.)"[3] (Emphasis added.) R.C. 5301.49 (A) expresses this same idea when it states

---

[1] *Heifner* v. *Bradford* (1983), 4 Ohio St. 3d 49, at 52.

[2] Simes & Taylor (1960), Model Title Standards.

[3] Model Title Standards, *supra,* Standard 4.10.

that a record marketable title "shall be subject to: * * * [a]ll interests and defects which are inherent in the muniments of which such chain of record title is formed * * *." The Marketable Title Act also provides for the recording of restrictions which are enforceable against the marketable title of property,[4] but such recordings other than recorded deeds of transfer are not herein involved.

It is necessary to digress to a small degree so that all the Revised Code terms that are germane to the present case can be sufficiently defined. R.C. 5301.47 (A) defines "marketable record title" as a "title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title * * *." A "root of title" is defined in Subsection (E) as "that conveyance or other title transaction in the chain of title of a person, * * * upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. * * *" Subsection (F) defines "title transaction" as "any transaction affecting title to any interest in land, including title by will or descent * * *." R.C. 5301.48 provides that one "* * * who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest * * * subject to the matters stated in section 5301.49 of the Revised Code.[5] A person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which said conveyance or other title transaction purports to create such interest * * *."

In the present case the root of title of plaintiff, Edward Toth, is a 1928 deed transferring title in the property herein involved from Henry H. Camp to Anna M. Camp. This deed contains no mention of the setback use restrictions which are in controversy. The setback use restrictions were set forth in a 1924 deed which had transferred the interest in the property to Henry H. Camp. Following Henry H. Camp's transfer of the property in 1928 to Anna M. Camp, the "root of title" transaction, no recorded act transpired which affected the Akron property until June 17, 1966, when the estate of Anna M. Camp transferred title in the property to Meyer Myers, Louis S. Myers and Isidore C. Myers. It was the Myerses who transferred the title in the Akron property to plaintiff on October 18, 1974.

Plaintiff's interest in the Akron, Ohio property is subject to any use restrictions which are a part of the marketable record title of the Akron property in accord with R.C. 5301.47 to 5301.56. The only transactions which could have an effect on the Akron property are the 1928 transfer to Anna M. Camp from Henry H. Camp, the 1966 transfer by Anna M. Camp's estate and the 1974 transfer to the plaintiff. The 1928 deed had no mention of the

[4] R.C. 5301.51.

[5] *Heifner* v. *Bradford, supra,* at 51.

setback use restrictions. The 1966 deed did contain a specific note which specifically referred to the setback use restrictions which are the center of this controversy. The defendants-appellees, Berks Title Insurance Company and Berks Akron Title Agency, Inc., assert that the reference in the 1966 deed is not sufficient because it is general and it points to a 1926 land plat as the source of the restriction. It is defendants-appellees' contention that the 1926 plat cannot be part of the muniments of plaintiff's record title because it is not a title transaction as defined in R.C. 5301.47(F).

The 1966 deed is a muniment within the record marketable title of the property now owned by the plaintiff. The 1966 deed specifically refers to the very use restrictions which are the subject matter of the controversy involved herein. R.C. 5301.49 (A) states: "Such record marketable title shall be subject to: * * * [a]ll interests and defects which are inherent in the muniments of which such chain of record title is formed * * *." The court need not look further than this first clause of R.C. 5301.49 (A) for the settlement of the within controversy. The remaining portion of Subsection (A) deals with the requirements necessary to make a general reference to a use restriction a part of the record marketable title.[6] The reference in the 1966 deed to the setback use restrictions was specific, not general, and as such, it is an interest or defect which is "inherent in the muniments."[7] Any interest or defect which is referred to specifically in a muniment within the marketable record title of a parcel of property, as defined by R.C. 5301.48, is not extinguished by the Ohio Marketable Title Act.

Since the setback use restrictions were specifically referred to in the 1966 deed, which is a part of the plaintiff's marketable record title, the court of appeals erred in reversing the final judgment of the trial court. For the foregoing reasons the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

W. Brown, Sweeney and Holmes, JJ., concur.

Celebrezze, C.J., Locher and J. P. Celebrezze, JJ., dissent.

---

[6] R.C. 5301.49 reads in part:

"Such record marketable title shall be subject to:

"(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest; and provided that possibilities of reverter, and rights of entry or powers of termination for breach of condition subsequent, which interests are inherent in the muniments of which such chain of record title is formed and which have existed for forty years or more, shall be preserved and kept effective only in the manner provided in section 5301.51 of the Revised Code;"

[7] R.C. 5301.49 (A).

CELEBREZZE, C.J., dissenting. Because I feel the majority opinion gravely misconstrues R.C. 5301.49 (A), I am forced to dissent.

The majority interprets the first clause of R.C. 5301.49 (A) to apply to situations where there is a "specific" reference to an interest created prior to the effective date of the root of title. As a consequence, the majority reasons that the latter portion of R.C. 5301.49 (A) is limited to situations where there is a general reference to an interest created prior to the root of title. The majority concludes that, since the use restrictions involved in the case at bar were specifically referred to in the 1966 conveyance,[8] the use restrictions were not extinguished by operation of the Marketable Title Act. I am unable to find any support in R.C. 5301.49 (A) for creation of the majority's specific versus general distinction.

R.C. 5301.49 provides in part:

"Such record marketable title shall be subject to:

"(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed * * *."

In general, the Marketable Title Act operates to extinguish interests and claims in existence prior to the effective date of the root of title. See R.C. 5301.47 (A) and 5301.50. However, R.C. 5301.49 and 5301.51 provide that certain interests in existence prior to the root of title may be preserved if properly noted subsequent to the root of title. As such, the Marketable Title Act does not bear upon interests affecting the realty which are created subsequent to the date of the root of title.

In consonance with the foregoing principles, the first clause of R.C. 5301.49 (A) means simply that the Marketable Title Act does not extinguish interests and defects which appear in muniments within the chain of record title. The reasoning is clear — the Marketable Title Act was not intended to extinguish those interests created prior to the root of title where there is adequate notice of the existence of the interest. In *Heifner* v. *Bradford* (1983), 4 Ohio St. 3d 49, this court stated at page 52, fn. 4, that one of the purposes of the Marketable Title Act was as follows:

" 'The Marketable * * * Title Act is also a recording act in that it provides for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has only himself to blame if his interest is extinguished. The legislature did not intend to arbitrarily wipe out old claims and interests without affording a means of preserving them and giving a reasonable period of time within which to take the necessary steps to accomplish that purpose.' * * *"

Nevertheless, the General Assembly has provided in the latter portion of

---

[8] The 1966 conveyance provides, in part:

"NOTE: The above plat shows a building line of 100 feet parallel and with the westerly line of Beck Road a building line of 60 feet parallel and with the northerly line of West Market Street for caption."

R.C. 5301.49 (A) that, in order for an interest appearing in a muniment within the chain of record title to be preserved, *"specific identification* be made therein of a recorded title transaction which creates such * * * interest * * *."* (Emphasis added.) In the case at bar, the reference in the 1966 conveyance makes no mention whatsoever of the fact that the use restriction was created in a 1924 recorded deed. As a result, R.C. 5301.49 (A) does not operate to preserve the use restriction, contrary to the majority's decision. Appellant's marketable record title is therefore not subject to the use restrictions created by the 1924 deed, set forth in the 1926 plat book, and referred to in the 1966 conveyance.

I do not attach significance to the term "general" as that word is used to purportedly modify the term "reference" in R.C. 5301.49 (A). Under the majority's view, a preliminary question in every title examination will be whether reference to an interest in a muniment within the chain of record title is specific or general. That being the case, virtually every title examination in which a reference is made to an interest created prior to the root of title will be subject to litigation on the specific-general issue. The majority's interpretation of R.C. 5301.49 (A) potentially ties up countless title examinations for years in the courts. While I do not believe that the purpose of the Marketable Title Act was to facilitate simplistic title examinations, I cannot believe the General Assembly intended the result reached by the majority when enacting the Marketable Title Act, and R.C. 5301.49(A) in particular.

Moreover, the majority approach would subject marketable record titles to interests predating the root of title upon a mere recitation of the interest in a muniment of record after the root of title. In my view, the majority disregards the dangers of its position. For instance, the majority determines that appellant's property is subject to the use restrictions set forth in the 1966 conveyance despite the fact that it is not necessary to analyze the document creating those restrictions. In the case *sub judice,* the parties are aware that the restrictions were created in a 1924 recorded deed. However, in the future, a court *must* impose use restrictions, easements, and other interests on property when such restrictions are described in a muniment recorded after the root of title *without* consideration of the document creating the restrictions. Thus, without reference to the creating document, the accuracy of the description of the interest is dependent *solely* on the muniment in which reference is made to the interest. The majority has evidently ignored or has not foreseen the possibility that such interest may be inaccurately transcribed, through fraud or inadvertence, from the creating document. Nonetheless, the only criterion that the majority requires prior to imposition of the restriction is that the interest be completely described in the muniment. Query: unless examination is made of the creating document, is it not literally impossible to determine whether the use restriction, easement, or other interest has been accurately or fully described in the subsequent muniment? I am convinced the General Assembly intended a result contrary to that posited by today's majority.

Accordingly, for the foregoing reasons, I would affirm the decision of the court of appeals below.

LOCHER and J. P. CELEBREZZE, JJ., concur in the foregoing dissenting opinion.

