JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant/cross-appellee Betty Pinkney and several other Shaker Heights residents (collectively, the "Pinkney Group") and defendants-appellees/cross-appellants, Southwick Investments, LLC and Heartland Developers, LLC (collectively, "Southwick"), appeal the trial court's decision regarding the enforceability of certain deed restrictions. Finding some merit to the appeal, we affirm in part and reverse in part.
 {¶ 2} The Pinkney Group, property owners on Warwick Road and South Park Boulevard in Shaker Heights, are part of the Van Sweringen Co. ("the VSC") Subdivision-Resubdivision Nos. 20 and 20A. In March 2002, Southwick acquired four parcels of land, Lots 33, 47, 48, and 49, which were formerly owned by the VSC. In November 2003, the Pinkney Group commenced the underlying lawsuit to prevent Southwick from developing the parcels based on certain deed restrictions. Specifically, they alleged that the July 11, 1944 VSC Deed ("1944 Deed") and a May 2, 1946 document entitled "Instrument Imposing Certain Restrictions Upon and Reserving Certain Rights Upon Property in the City of Shaker Heights, Cuyahoga County, Ohio" ("1946 Restrictions") imposed various land use restrictions, which limited, inter alia, the use of the property to single-family homes. They further claimed that these land use restrictions were preserved by virtue of a document entitled, "Notice of Claim to Preserve Interest in Land," filed in 1964 ("1964 Notice of Claim").
 {¶ 3} Based on these documents, the Pinkney Group sought a declaration that the 1964 Notice of Claim preserved the deed restrictions and, to the extent that such restrictions were not preserved because of Ohio's Marketable Title Act ("MTA"), the MTA was unconstitutional as applied, depriving them of their property rights. The Pinkney Group further demanded injunctive relief to prevent Southwick and Heartland Developers from violating the restrictions and a declaration that the restrictions were valid and enforceable.
 {¶ 4} The parties moved for summary judgment, which the trial court granted in part. Finding that the 1964 Notice of Claim was invalid because it had not been duly verified by oath, the court examined the "root of title" for each parcel to determine whether the land use restrictions survived. In regard to Lots 47, 48, and 49, the court held that the root of title for each lot did not state any use restrictions with particularity and, therefore, those lots were free of the use restrictions pursuant to the MTA. However, the court found that the 1944 Deed was the root of title for Lot 33 and thus the use restrictions applied, and therefore granted the Pinkney Group injunctive relief enjoining Southwick from any activities in violation of the 1944 use restrictions, including the construction of multi-family dwellings on Lot 33.
 {¶ 5} The Pinkney Group appeals, raising eight assignments of error and Southwick cross-appeals, raising five assignments of error, which we will address together and out of order where appropriate.
 Final Appealable Order {¶ 6} In its first cross-assignment of error, Southwick contends that the trial court failed to adequately declare the parties' rights and obligations with respect to the deed restrictions. Southwick argues that the trial court's omission of any express declaration of the constitutionality of the MTA deprives this court of jurisdiction because the decision is not a final appealable order.
 {¶ 7} Pursuant to Section 3(B)(2), Article IV of the Ohio Constitution, our appellate jurisdiction is limited to the review of final judgments of lower courts. Ferraro v. B.F. GoodrichCo., 149 Ohio App.3d 301, 2002-Ohio-4398, at 6, citing GeneralAcc. Ins. Co. v. Insurance Co. of North America (1989),44 Ohio St.3d 17, 20. For a judgment to be final and appealable, it must satisfy the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B).
 {¶ 8} "In a declaratory judgment action, the trial court has a duty to construe the document under consideration and thereafter declare the rights of the parties under that document." Assn. of Cleveland Firefighters, #93 v. Campbell,
Cuyahoga App. No. 84148, 2005-Ohio-1841, ¶ 7, citing R.C. 2721.01
et seq. The failure to expressly declare the rights of the parties constitutes error because no final order is created.Culkar v. Village of Brooklyn Heights, et al., Cuyahoga App. No. 84276, 2004-Ohio-5392; Alsop v. Heater (1975),45 Ohio App.2d 201.
 {¶ 9} We find that the trial court fulfilled its duty in declaring the parties' rights and responsibilities with respect to the deed restrictions, thereby making its decision final and appealable. See R.C. 2721.02(A). In the instant case, the trial court did not merely grant or deny the parties' motions for summary judgment without any determination as to the enforceabilty of the deed restrictions. Compare, Drs. Hill Thomas Co. v. Ohio Insurance Guaranty Assn., Cuyahoga App. No. 80401, 2002-Ohio-4419. To the contrary, the trial court issued a detailed opinion, applying the MTA and declaring the enforceability of the land use restrictions with respect to each parcel of land. Further, upon this court's limited remand under App.R. 9(E), the trial court expressly declared that the MTA was constitutional.
 {¶ 10} As to Southwick's remaining claims that the trial court failed to make other specific declarations, the record reveals that the trial court's order rendered these issues moot. Thus, because a trial court is not required to "declare" moot points, we find no error. See, generally, Reinbolt v. Nat'l FireIns. Co., 158 Ohio App.3d 453, 2004-Ohio-4845. Southwick's first cross-assignment of error is overruled.
 {¶ 11} Accordingly, having found that the trial court's decision is a final appealable order, we now address the remaining assignments of error.
 Lots 47, 48, and 49 {¶ 12} In its second cross-assignment of error, Southwick contends that the Pinkney Group's claims pertaining to Lots 47, 48, and 49 are rendered moot by their failure to obtain a stay of execution of the trial court's order and the subsequent construction on the property. We agree.
 {¶ 13} As a general rule, courts will not resolve issues that are moot. Poulson v. Wooster City Planning Comm'n, Wayne App. No. 04CA0077, 2005-Ohio-2976, citing Miner v. Witt (1910),82 Ohio St. 237. In Miner, the Ohio Supreme court addressed the issue of when a matter becomes moot:
"`The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence.'"
Id. at 238, quoting Mills v. Green (1895), 159 U.S. 651, 653.
 {¶ 14} As recognized by the Ninth District Court of Appeals in Schuster v. Avon Lake, Lorain App. No. 03CA008271, 2003-Ohio-6587, at 8, "where an appeal involves the construction of a building or buildings and the appellant fails to obtain a stay of execution of the trial court's ruling and construction commences, the appeal is rendered moot." See, also, Nextel WestCorp. v. Franklin County Bd. of Zoning Appeals, Franklin App. No. 03AP-625, 2004-Ohio-2943; Bd. of Commrs. v. Saunders,
Montgomery App. No. 18592, 2001-Ohio-1710. Similarly, this court has previously dismissed an action on mootness grounds when the development at issue had been built by the time of the appeal. See Hanson v. City of Shaker Heights (May 3, 2004), Cuyahoga No. 84141.
 {¶ 15} Here, in support of its argument, Southwick has submitted the affidavit of J. Gordon Priemer, President of Heartland Developers, LLC, which verifies that South Park Row Development (fka "Belgian Court") is being constructed on Lots 47, 48, and 49 and that "construction on the first of the five buildings is substantially complete." The affidavit further states that the "site improvements designed to service all five of the projected Belgian Court\South Park Row buildings, including storm sewer lines, sanitary sewer lines, underground utility lines and all rough grading work, are already completely installed." Although we recognize that the entire construction project has not been fully completed, we find the evidence of the work that has been completed to be compelling.
 {¶ 16} Further, we find no merit to the Pinkney Group's contention that this court is prohibited from considering Priemer's affidavit or other evidence of the building construction. As recognized in Miner, supra, a reviewing court may consider extrinsic evidence in determining whether the mootness doctrine bars the appeal.
 {¶ 17} Accordingly, the second cross-assignment of error is sustained. However, to the extent that some of the remaining assignments of error pertain to Lot 33, we will address each in turn.
 1964 Notice of Claim {¶ 18} In its first assignment of error, the Pinkney Group contends that the trial court erred in finding that the 1964 Notice of Claim was not duly verified by oath as required under R.C. 5301.51. It argues that the Notice of Claim was duly verified, thereby preserving the land use restrictions on all four parcels of land, i.e., Lots 33, 47, 48, and 49, and precluding the grant of summary judgment in favor of Southwick.
 {¶ 19} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370, citing, Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus; see, also, Civ.R. 56(C).
 {¶ 20} Although R.C. 5301.51 has been amended since 1961, the 1961 version is the applicable statute in the case at bar because it was in effect at the time of filing. The former R.C. 5301.51
provides in relevant part:
"Any person claiming an interest in land may preserve and keep effective such interest by filing for record during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in writing, duly verified by oath, setting forth the nature of the claim. * * *"
R.C. 5301.51(A).
 {¶ 21} The trial court held that the 1964 Notice of Claim was not duly verified by oath. Although the Pinkney Group correctly asserts that the verification was not required to be in the form of an affidavit, it fails to address the fact that the 1964 Notice of Claim lacks any language denoting an oath, or testimony, an affirmation, or a swearing.
 {¶ 22} Here, the statute does not expressly define the requisite verification by oath, and, therefore, we must apply the usual, normal, or customary meaning. See Chari v. Sheriff,91 Ohio St.3d 323, 2001-Ohio-49, citing State ex rel. Cuyahoga Cty.v. State Personnel Bd. of Review (1998), 82 Ohio St.3d 496, 499; R.C. 1.42. "`Verification' means a `formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document.' Garner, Black's Law Dictionary (7th Ed. 1999) 1556; see, also, Webster's Third New International Dictionary (1986) 2543." Chari, supra, at 327 (habeas petition dismissed because, inter alia, "neither Chari nor his attorney expressly swore to the truth of the facts contained therein").
 {¶ 23} Moreover, a notary's signature and seal are not a substitute for the formal swearing to the truth by the affiant when such is required for verification. Cf. State ex rel.Herbert v. McFaul (June 4, 1998), Cuyahoga App. No. 74246 ("Although a notary public has signed and affixed a seal to the complaint, petitioner has not complied with the requirements for the form of an affidavit").
 {¶ 24} In the instant case, the Notice of Claim contains no indication that the signatories swore to the truth of the facts therein. Above the signatory and witness lines, it states:
"IN WITNESS WHEREOF, said The Van Sweringen Company hereto sets its hand and corporate seal by James B. Lewis, its President, and Pauline M. Lewis, its Secretary, this 29th day of September, 1964."
 {¶ 25} This language fails to indicate the swearing of any oath by the signatories relative to the 1964 Notice of Claim's contents. Further, the notary's closing certificate reflects only an attestation of the signatories' identity. It states:
"BEFORE ME, a Notary Public in and for said County, personally appeared the above named The Van Sweringen Company by James B. Lewis, its President, and Pauline M. Lewis, its Secretary, who acknowledge that they did sign the foregoing instrument and that the same is the free act and deed of said corporation and the free act and deed of each of them personally and as such officers."
 {¶ 26} Further, although the 1964 Notice of Claim included the corporate seal of the Van Sweringen Company and was witnessed as well as acknowledged as being signed, these actions do not negate the express requirement to "verify by oath." Moreover, to the extent that the Pinkney Group urges this court to cure this defect by virtue of Article 2, Section 28 of the Ohio Constitution and R.C. 2719.01 and 5301.01, we note that it failed to request the same of the trial court below. Thus, we find that it has waived this issue on appeal.
 {¶ 27} Accordingly, because the 1964 Notice of Claim fails to comply with R.C. 5301.51(A), we find that the trial court properly determined that it was void.
 {¶ 28} The first assignment of error is overruled.
 Constitutionality of the MTA {¶ 29} In its third, fourth, fifth, sixth, and seventh assignments of error, the Pinkney Group challenges the constitutionality of the MTA as applied in the instant case. In support of each constitutional challenge, it contends that the application of the MTA eliminates its "valuable and substantial vested property rights represented by the Van Sweringen Restrictions." On this basis alone, it contends that the MTA constitutes: (1) improper retroactive legislation in violation of Article 2, Section 28 of the Ohio Constitution, (2) a violation of Article 1, Section 10 of the United States Constitution and Article 2, Section 28 of the Ohio Constitution as an unlawful impairment of contractual obligations, (3) a violation of its procedural and substantive due process rights under the Fifth andFourteenth Amendments of the United States Constitution and Article 1, Section 16 of the Ohio Constitution, and (4) a violation of its right to equal protection under theFourteenth Amendment of the United States Constitution and Article 1, Section 2 of the Ohio Constitution. We find no merit to these arguments.
 {¶ 30} Initially, we note that all legislative enactments are presumed constitutional and valid. State v. Cowan,103 Ohio St.3d 144, 2004-Ohio-4777. The party challenging the legislation bears the burden of demonstrating, beyond a reasonable doubt, that the subject legislation is unconstitutional. Id. Thus, we cannot find the MTA unconstitutional unless the Pinkney Group establishes its unconstitutional nature beyond a reasonable doubt.
 {¶ 31} Ohio's MTA, R.C. 5301.47 to 5301.56, was enacted in 1961 as a means "to simplify and facilitate land title transactions by allowing persons to rely on a record chain of title as described in R.C. 5301.48 and subject to limitations of R.C. 5301.49." Semachko v. Hopko (1973), 35 Ohio App.2d 205,209. See, also, Ohio Jurisprudence 3d, Real Property Sales and Exchanges, Section 74. The purpose of the MTA is to improve the marketability of title by extinguishing certain outstanding claims due to a lapse of time. Minnich v. Guernsey Sav. LoanAssn. (1987), 36 Ohio App.3d 54, 55, citing Hausser Van Aken, Ohio Real Estate Law and Practice (1985), T 7.02.
 {¶ 32} R.C. 5301.48, which establishes "marketable record title," provides that:
"Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest * * *." {¶ 33} "Marketable record title depends upon an unbroken chain of recorded title transactions from the present claimant back to the title transaction `which (1) has been of record for more than forty years and (2) adequately embodies the real property interest.'" Id., quoting Hausser Van Aken, supra, T 7.03(C), at 152; and R.C. 5301.47. This title transaction is called the "root of title."[1]
Id.
 {¶ 34} Further, the MTA extinguishes certain interests and claims existing prior to the effective date of the "root of title," unless they are: (1) specifically stated or identified in the root of title, (2) specifically stated or identified in one of the muniments of the chain of record title within forty years after the root of title, (3) recorded pursuant to R.C. 5301.51 or R.C. 5301.52, (4) one of the other exceptions provided in R.C.5301.49, or (5) one of the rights that cannot be barred by the MTA as provided in R.C. 5301.53. See Semachko, supra; Ohio Jurisprudence 3d, Real Property Sales and Exchanges, Section 74.
 {¶ 35} The essence of the Pinkney Group's claims is that, because the MTA extinguishes the Van Sweringen land use restrictions absent compliance with one of the above mentioned conditions, it is unconstitutional. However, the Pinkney group broadly asserts that the MTA violates its constitutional rights without citing any relevant authority in support of its proposition. Conversely, Southwick cites numerous cases where Ohio courts have applied the MTA, expressly or implicitly finding the Act to be constitutional. See, generally, Toth v. BerksTitle Ins. Co. (1983), 6 Ohio St.3d 338; Heifner v. Bradford
(1983), 4 Ohio St.3d 49; Carlson v. Koch (Jan. 19, 1978), Cuyahoga App. No. 36497; Semachko, supra. See, also, Blakelyv. Capitan (1986), 34 Ohio App.3d 46.
 {¶ 36} In regard to the Pinkney Group's claim that the MTA operates as unconstitutional retroactive legislation, the Ohio Supreme Court implicitly rejected this argument in Heifner v.Bradford (1983), 4 Ohio St.3d 49. In Heifner, the court reversed the lower court's decision and found that a transfer under a will was a "title transaction" within the meaning of the MTA. However, in so doing, the court applied and upheld the MTA, thereby agreeing with the lower court's analysis and rejection of alleged retroactivity and due process infirmities. In addressing the claim that the MTA was unconstitutional as retroactive legislation, the lower court relied on the reasoning espoused in Simes Taylor, The Improvement of Conveyancing by Legislation (1960), which stated:
"The statute is both prospective and retrospective. Insofar as it is prospective, no one would question its constitutionality. Insofar as it is retroactive, its constitutionality is justified on the grounds hereafter stated.
If we approach the question from the standpoint of weighing the objectives of the Act as against the hardship imposed upon persons who have ancient claims * * * the answer is easy. Any legislation designed to simplify conveyancing concededly has a worthy objective. But this legislation is much more comprehensive and important than most title legislation. Hence, its objectives should be given correspondingly greater weight * * *.
The Model Marketable Title Act is clearly within the principle that the legislature can require a recording or a re-recording to give notice of existing interests, and can extinguish claims of those who fail to record * * *. The only qualification to this principle is that a reasonable time must be given after the legislation is enacted, to permit all persons having claims, however old, to record notices. The model act does this, allowing two years after the effective date of the act for this purpose."
Heifner v. Bradford (Jan. 29, 1982), Muskingum App. No. CA-81-10 (rev. on different grounds), quoting L. Simes and C. Taylor, supra, at 271-272.[2]
 {¶ 37} We find this reasoning persuasive and applicable to the instant case. To the extent that the MTA operates retrospectively, we find that it is merely remedial. As stated by the Ohio Supreme Court in State v. Cook, 83 Ohio St.3d 404,411, 1998-Ohio-291, "remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." As opposed to a substantive statute applied retroactively, "a purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively." Id., citing Van Fossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100, 107. Further, despite the occasional substantive effect, "it is generally true that laws that relate to procedures are ordinarily remedial in nature." Id. Thus, although the MTA requires specific notice requirements to preserve a party's future claim or interest in land, these are procedural requirements necessary to simplify land transactions for the mutual benefit of the purchaser and the seller.
 {¶ 38} Next, we find that the Pinkney Group fails to demonstrate beyond a reasonable doubt that the MTA violates its procedural and substantive due process rights. "`In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" Shirokey v. Marth (1992),63 Ohio St.3d 113, 119, quoting Zinermon v. Burch (1990), 494 U.S. 113, 125. In the instant case, as applied to the Pinkney Group, the MTA provides multiple specific procedural steps which could have preserved the interests upon which it predicates its claims. The failure to comply with such procedural requirements does not render the MTA unconstitutional.
 {¶ 39} Likewise, the Pinkney Group has failed to demonstrate that the MTA is arbitrary, capricious, or unreasonable or that it does not further the public health, safety, morals, or general welfare of the community, thereby violating the Pinkney Group's substantive due process rights. See, generally, Yajnik v. AkronDept. of Health, Hous. Div., 101 Ohio St.3d 106, 2004-Ohio-357.
 {¶ 40} Furthermore, in Carlson v. Koch (Jan. 19, 1978), Cuyahoga App. Nos. 36497 and 36498, this court previously recognized that the MTA is constitutional because it "is rationally related to the legitimate state interest of simplifying land transactions for the mutual benefit of the purchaser and seller." In reaching this conclusion, we found the holdings of other state courts upholding the constitutionality of similar acts to be persuasive because "the benefit to the public outweighs the injury to those disadvantaged by the act" and the acts provided a reasonable amount of time after enactment for a party to assert his rights. Id., citing Hiddleston v. NebraskaJewish Educ. Society (1971), 186 N.W.2d 904 (see, particularly, the concurring opinion) and Presbytery of Southwest Iowa v.Harris (1975), 226 N.W.2d 232; Selectmen of Nahant v.United States (D. Mass. 1968), 293 F. Supp. 1076; Wichelman v.Messner (1957), 83 N.W.2d 800. Thus, because Ohio's MTA serves a legitimate state interest and allows all persons with future interest in land to preserve the same by filing notice within a reasonable period of time after the date of enactment, it survives a constitutional due process challenge. Id.
 {¶ 41} Moreover, we find no merit to the Pinkney Group's contention that the MTA unlawfully impairs its contractual obligations. Generally, the alteration or modification of a remedy existing when a contract was entered does not constitute an impairment of contractual obligations. See, e.g., Lash v.Mann (1943), 141 Ohio St. 577; Flory v. Cripps (1937),132 Ohio St. 487. We fail to see how the MTA's procedural requirements, relating to preserving vested property rights, unlawfully impairs a party's contractual obligation. Rather, we find that the MTA's requirement that interest holders exercise additional diligence in preserving their rights serves the legitimate purpose of simplifying land transactions.
 {¶ 42} Finally, we find no support for the Pinkney Group's equal protection challenge. We note that the Pinkney Group fails to make any specific equal protection claim relating to it or to provide any reason for invalidating the MTA as unconstitutional on that basis. Nevertheless, because we find no suspect classification by the MTA and, further, because we recognize that the MTA is rationally related to the legitimate state interest of simplifying land transactions, we find that the Pinkney Group's equal protection challenge fails.
 {¶ 43} Accordingly, the third, fourth, fifth, sixth, and seventh assignments of error are overruled.
 Lot 33 {¶ 44} In its third and fourth cross-assignments of error, Southwick contends that the trial court erred in determining that the 1944 Deed's land use restrictions applied to Lot 33 and that such deed was its "root of title."
 {¶ 45} Southwick argues that the root of title for Lot 33 is a deed dated September 4, 1958, from Dorothy Goldstein to Fred H. Mandel (the "1958 Deed"). It claims that the 1958 Deed preserved none of the 1944 Deed use restrictions within Lot 33's chain of title because it neither stated any use restrictions nor referred to any prior instruments containing such restrictions, with any of the specificity required to preserve them under the MTA. Southwick argues that the language contained in the 1958 Deed nearly mirrors the same deficient description at issue in the root of title for Lots 47, 48, and 49, and, therefore, the trial court should have declared the use restrictions unenforceable as it did in regard to the other parcels. We agree.
 {¶ 46} Initially, we note that the Pinkney Group concedes that the 1944 Deed does not govern Lot 33. Rather, it argues that the 1946 Restrictions apply to Lot 33 and that, in essence, the root of title does not alter the enforceability of the restrictions on the property. It further implies that the trial court properly disregarded the 1958 Deed as the root of title because it was not submitted by Southwick. We find these arguments lack merit.
 {¶ 47} The record reveals that Southwick attached to its motion for summary judgment the affidavit of Edward R. Horejs, Jr., Vice President and Regional Counsel for Chicago Title Insurance Company, who conducted a title history on Lot 33 and stated that the root of title for Lot 33 was the 1958 Deed. The Pinkney Group likewise included in its brief in opposition to Southwick's motion for summary judgment a copy of the 1958 Deed, indicating that it was a true and accurate copy of the deed for Lot 33. It neither disputed Southwick's claim that the 1958 Deed was the root of title for Lot 33 nor did it refer to any other deed. No evidence exists in the record disputing the fact that the 1958 Deed is the root of title for Lot 33. Thus, when determining the root of title for Lot 33, the trial court erred in looking beyond the 1958 Deed and improperly relied on the 1944 Deed.
 {¶ 48} Further, our review of the 1958 Deed reveals that it contains the same boilerplate language at issue in the roots of title for the other parcels. Here, the 1958 Deed states that the title transferred in fee simple and was:
"* * * free from all incumbrances whatsoever except taxes and assessments, general and special, respread assessments, conditions, reservations and limitations of record, buildings and use restrictions of record, and zoning or other ordinances of the City of Shaker Heights, if any there be * * *."
 {¶ 49} However, this language fails to comply with the specificity requirement contained in R.C. 5301.49(A), which provides that such interests and defects shall remain in force and effect:
"* * * provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest * * *."
 {¶ 50} The 1958 Deed exception neither identifies the recorded title transaction creating such restrictions nor specifically refers to the nature of the encumbrances created. See Patton v. Poston (Apr. 25, 1983), Athens App. No. 1141 ("Under R.C. 5301.49(A), in order to be enforceable, a reference to a general interest of record must specifically identify the recorded title transaction which created such interest."). Accordingly, we fail to see how it preserved any land use restrictions and, thus, we sustain Southwick's third and fourth cross-assignments of error.
 {¶ 51} Furthermore, having found that the trial court properly declared that the 1964 Notice of Claim was invalid and that the MTA extinguished the land use restrictions pertaining to Lots 47, 48, and 49, we find that the remaining assignments and cross-assignments of error are moot.
 {¶ 52} In summary, we find the Pinkney Group's challenge with respect to the alleged use restrictions on Lots 47, 48, and 49 to be moot. We affirm the judgment of the common pleas court to the extent that the court determined that (1) the 1964 Notice of Claim was not duly verified by oath and therefore did not preserve the land use restrictions pursuant to the Marketable Title Act in effect at the time the notice was filed, and (2) the Marketable Title Act was constitutional as applied. We reverse the judgment of the common pleas court to the extent that the court determined that the 1944 Deed was the root of title for Lot 33 and that the use restrictions contained in that deed applied to Lot 33. We hold that the root of title for Lot 33 was the 1958 Deed, and that the 1958 Deed did not specifically identify the land use restrictions on Lot 33 so as to preserve them pursuant to the Marketable Title Act. Accordingly, we vacate the injunction entered by the common pleas court precluding Southwick from activities on Lot 33 in violation of the 1944 use restrictions.
It is ordered that appellants and appellees bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J. and Rocco, J. concur.
[1] A "root of title" is defined in R.C. 5301.47(E) as "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." The effective date of the "root of title" is the date on which it is recorded. R.C. 5301.47(E).
[2] As noted by the Ohio Supreme Court in Heifner, supra, Ohio's MTA is taken primarily from the Model Marketable Title Act, first proposed in Simes and Taylor, supra.