[Cite as *Warner v. Palmer*, 2017-Ohio-1080.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| FRED A. WARNER, et al., | ) | CASE NO. 14 BE 0038 |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| KARL E. PALMER, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 13 CV 339

JUDGMENT:       Reversed and Remanded.

APPEARANCES:

For Plaintiffs-Appellees:       Atty. Todd M. Kildow
Atty. Robert D. Plumby
Atty. Cory M. DelGuzzo
Phillips, Gardill, Kaiser & Altmeyer, PLLC
197 West Main Street.
St. Clairsville, Ohio, 43950

For Defendants-Appellants:       Atty. David K. Schaffner
Schaffner Law Offices, Co., LPA
132 Fair Avenue NW
New Philadelphia, Ohio 44663

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  March 22, 2017

ROBB, P.J.

{¶1} Defendants-Appellants Karl E. Palmer, et al. appeal the decision of the Belmont County Common Pleas Court granting the motion for judgment on the pleadings filed by Plaintiffs-Appellees Fred A. Warner, Co-Trustee of the Warner Family Trust, et al. The trial court held the severed mineral interest was automatically abandoned under the 1989 Dormant Mineral Act. In accordance with decisions of the Ohio Supreme Court, the mineral interest was not abandoned under the 1989 Dormant Mineral Act as no claim was made prior to the 2006 amendments. As the 1989 version can no longer be used, the trial court's decision finding the minerals abandoned under the 1989 Dormant Mineral Act is reversed.

{¶2} Appellees set forth alternative claims below, such as: Appellants were not eligible to file a claim to preserve the mineral interest under the 2006 Dormant Mineral Act; and the mineral interest was extinguished under the Marketable Title Act as the surface owners had an unbroken chain of title for more than forty years with a root deed recorded on May 11, 1967. Appellees ask this court to affirm the trial court's judgment on these claims. We conclude a judgment on the pleadings should not have been granted. Accordingly, the trial court's judgment is reversed, and the case is remanded for further proceedings.

## STATEMENT OF THE CASE

{¶3} The plaintiffs, Fred A. Warner and Jennifer K. Warner, are the co-trustees of the Warner Family Trust. The trust owns property in Belmont County. In 2013, the plaintiffs filed a complaint seeking quiet title to a one-half mineral interest which was severed from the property via a deed recorded in 1924. The original grantors who severed and reserved half of the minerals were: John W. and Helen S. Kirk, H.E. and Adeline Egger, and A.C. and Blanche Peters. The defendants are descendants of John W. Kirk or heirs of his descendants, Karl E. Palmer, Marilyn Wright, Lenane Smith, Edward Turner, Margaret R. Kirk, Martha Zadvosky, Patricia Muench, and Malinda Moore.

{¶4} The factual assertions that follow are relied upon by Appellees. A.C. Peters died in 1957, and his son died in 1981. H.E. Eggers died in 1963; it is believed his wife predeceased him. It is said their estates did not list the subject

mineral interest in the inventory. In 1987, John W. Kirk died testate, and an ancillary administration of his estate was filed in the Belmont County Probate Court. It is said Helen S. Kirk predeceased him. The estate of John W. Kirk listed as next of kin Wilma Kirk (surviving spouse), Jane Hinch, Barbara Turner, Diane Palmer, defendant Marilyn Wright, and John D. Kirk. John W. Kirk's estate inventory did not list this mineral interest. John W. Kirk's son, John D. Kirk, died in 2004. An estate was filed in Franklin County, listing as next of kin Margaret Kirk and three daughters, Malinda Moore, Martha Zadvosky, and Patricia Kirk-Muench (all of whom are defendants in this action). It is said John D. Kirk's will left his property to his wife and a trust. His estate's inventory did not list this mineral interest. Defendants Edward J. Turner and Lenane T. Smith are the next of kin listed in the 2006 estate of Barbara Turner; the inventory of her estate did not list this mineral interest.

{¶5} The complaint alleged the mineral interest was abandoned and automatically vested in the surface owners as of March 22, 1992, the end of the grace period under the 1989 Dormant Mineral Act, which was believed to be a self-executing statute. The complaint also stated notice of abandonment under the 2006 Dormant Mineral Act would be served by certified mail on "[t]hose for whom we had addresses," which would have included the defendants (whose addresses were listed under their names in the caption of the complaint), and notice would be provided by publication as well. The complaint claimed the lack of a recorded title transaction meant there were no holders who could file a claim to preserve (or who had to be served with notice) under the 2006 Dormant Mineral Act. The complaint alternatively asserted the plaintiffs' interest in the minerals was vested in the surface owner under an unbroken chain of title for more than forty years with a root deed recorded on May 11, 1967. The severed mineral interest of the original grantors was said to be extinguished and "null and void" pursuant to R.C. 5301.50.

{¶6} Appellants filed an answer and a counterclaim seeking quiet title to John W. Kirk's one-third of the one-half mineral interest reservation. The answer said the Kirk mineral interest was transferred as residual property by a will filed in the probate court and claimed this constituted a title transaction. They also urged the 1989 Dormant Mineral Act could no longer be utilized and was unconstitutional. As

to the 2006 Dormant Mineral Act, they noted the time for filing a timely claim to preserve after the notice of abandonment had not yet expired. They denied various paragraphs of the complaint setting forth allegations as to the Marketable Title Act.

{¶7} Appellees replied to the counterclaim and filed a motion for judgment on the pleadings. In addition to arguing there was automatic abandonment under the 1989 Dormant Mineral Act, they argued there were no holders who could file a claim to preserve under the 2006 Dormant Mineral Act due to the failure to list the mineral interest in the estate inventories. Attached to Appellees' motion for judgment on the pleadings was the November 27, 2013 claim to preserve the mineral interest filed on behalf of Appellants and other heirs by Washington Trust Bank as Trustee of the Trust of John D. Kirk. Appellees also asserted the mere filing of an estate does not constitute a title transaction if the asset at issue is not listed in the estate inventory. They alternatively asserted the reservation of minerals was extinguished under the Marketable Title Act as the root title to their property rested in a deed filed for record on May 11, 1967, more than forty years ago.

{¶8} Appellants then filed an amended answer and counterclaim, and Appellees replied. Appellants' subsequent response to the motion for judgment on the pleadings focused on arguing it was too late to enforce a claim of abandonment under the 1989 Dormant Mineral Act and the act was unconstitutional. As to the 2006 Dormant Mineral Act, the defendants argued: they were holders or the successors of holders; notice of abandonment by publication cannot be used unless certified service cannot be completed; a timely claim to preserve was recorded; and a claim to preserve by one holder preserves the mineral interest for all holders. Appellants also claimed the 1987 filing of the will with a residuary clause in a Belmont County estate constituted a title transaction under R.C. 5301.47.

{¶9} On August 17, 2014, the trial court granted judgment on the pleadings in favor of Appellees. The court found the 1989 Dormant Mineral Act self-executing with automatic vesting of the mineral interest in the surface owner absent a savings event. The trial court noted, in order to constitute a savings event, a title transaction must be filed or recorded in the recorder's office. The court concluded the passing of assets by a will or intestacy was insufficient as the transaction was not filed in the

recorder's office. Because the recorder's office reflected no title transaction, the court also found the defendants and Washington Trust Bank as trustee for the trust of John D. Kirk had no "standing" to claim an interest in the minerals as they were not "living holders, or successors or assignees of holders, who could file a valid claim" to preserve. Within a sentence dealing with the 1989 Dormant Mineral Act, the trial court added a finding that the plaintiffs' interest was vested in an unbroken chain of title for more than forty years with a root deed recorded on May 11, 1967 and the mineral interest created prior to the date of recordation of the root deed was extinguished.

{¶10} A timely notice of appeal was filed by Appellants. Briefs were filed in September and November of 2014. On December 1, 2014, this court issued a stay in this case (and others) pending the Ohio Supreme Court's decisions in various Dormant Mineral Act cases. The stay was lifted by this court's October 19, 2016 judgment entry.

<u>1989 Dormant Mineral Act</u>

{¶11} Appellants set forth three assignments of error. All three assignments of error deal with the 1989 Dormant Mineral Act, arguing the 1989 version of the act: (1) cannot be applied to claims asserted after the 2006 amendments; (2) did not result in automatic vesting of mineral interests in the surface owner; and (3) was unconstitutional.

{¶12} The Ohio Supreme Court held the 1989 Dormant Mineral Act was not self-executing and did not "automatically transfer the interest from the mineral rights holder to the surface owner by operation of law." *Corban v. Chesapeake Exploration, L.L.C.*, __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, ¶ 26-28 (plurality); *id.* at ¶ 43, 104 (Kennedy, J., concurring in this part of decision). "Rather, a surface holder seeking to merge those rights with the surface estate under the 1989 law was required to commence a quiet title action seeking a decree that the dormant mineral interest was deemed abandoned." *Id.* at ¶ 28.

> Dormant mineral interests did not automatically pass by operation of law to the surface owner pursuant to the 1989 law. Thus, as of June 30, 2006, any surface holder seeking to claim dormant mineral rights

and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Id.* at ¶ 31. *See also id.* at ¶ 43 (Kennedy, J., concurring) ("the 2006 version of the DMA applies to all claims asserted after June 30, 2006"). The Court also found the application of the 2006 DMA to claims filed after its effective date does not impair vested rights in violation of the Retroactivity Clause. *Id.* at ¶ 32, 35.

**{¶13}** In another case, the Court reiterated: "In *Corban*, we held that the 2006 version of the Dormant Mineral Act applies to all claims asserted after 2006 alleging that the rights to oil, gas, and other minerals automatically vested in the owner of the surface estate prior to the 2006 amendments." *Walker v. Shondrick-Nau*, __ Ohio St.3d __, 2016-Ohio-5793, __ N.E.3d __, ¶ 16. The Court then applied its prior *Dodd* holding to find the mineral interest was not abandoned under the 2006 Dormant Mineral Act due to the timely filing of a claim to preserve after the surface owner's notice of abandonment. *Id.* at ¶ 22, citing *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147.

**{¶14}** Based upon *Corban* and *Walker*, Appellants' first two assignments of error have merit. Appellants' third assignment of error (arguing the 1989 version was unconstitutional) is moot. *See, e.g., Tribett v. Shepherd*, __ Ohio St.3d __, 2016-Ohio-5821, __ N.E.3d __, ¶ 1 (where the Court heard oral arguments on the constitutionality of the 1989 version but then disposed of the case based upon *Corban*). In accordance, the mineral interest underlying the subject property was not abandoned under the 1989 Dormant Mineral Act. The trial court's judgment finding abandonment under the 1989 Dormant Mineral Act is therefore reversed.

**{¶15}** Appellees contend we should affirm the trial court's judgment based on the findings which appear applicable to the 2006 Dormant Mineral Act or the Marketable Title Act. Contrary to Appellant's suggestions, it is permissible for a plaintiff to raise alternative theories of recovery in case one theory is not accepted by

the trial court. *See, e.g., Eisenbarth v. Reusser*, 7th Dist. No. 13MO10, 2014-Ohio-3792, ¶ 38. *See generally Kamposek v. Johnson*, 11th Dist. No. 2003-L-124, 2005-Ohio-344, ¶ 26 (may not recover on two different theories, but may assert alternative theories in the complaint).

## 2006 Dormant Mineral Act

**{¶16}** Pursuant to R.C. 5301.56(B), "Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the following applies:" (1) the interest is in coal; (2) the interest is held by the government; or (3) one of six listed savings events has occurred within the twenty years immediately preceding the date on which notice is served or published under division (E). One savings event occurs when "[t]he mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located." R.C. 5301.56(B)(3)(a). Another savings event occurs when "[a] claim to preserve has been filed in accordance with division (C) of this section." R.C. 5301.56(B)(3)(e).

**{¶17}** In accordance with division (E), the surface owner must: "Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned." R.C. 5301.56(E)(1). "If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located." *Id.* The surface owner can then file an affidavit of abandonment in the recorder's office at least thirty but not later than sixty days after the notice of abandonment is served or published. R.C. 5301.56(E)(2).

**{¶18}** No later than sixty days after service or publication of the notice of abandonment, a holder or a holder's successor or assignee can claim the mineral interest has not been abandoned by filing: (a) a claim to preserve the mineral interest in accordance with division (C); or (b) an affidavit identifying a savings event

within the twenty years immediately preceding the date on which the notice was served or published. R.C. 5301.56(H)(1)(a)-(b). This means the mineral interest can be preserved by filing an affidavit identifying a savings event after the notice of abandonment or by filing a claim to preserve after the notice of abandonment (and not merely by filing the claim to preserve in the twenty years prior to the notice). *Dodd*, 143 Ohio St.3d 293 at ¶ 30.

{¶19} If the holder of the mineral interest does not timely file a post-notice claim to preserve or an affidavit identifying a saving event, then the surface owner can file a "notice of failure to file" in the recorder's office, at which point the mineral interest "shall vest in the owner of the surface of the lands." R.C. 5301.56(H)(2). (The notice and recording procedures, the explicit defining of the initiating date for the look-back, and the provision for a subsequent claim to preserve were part of the 2006 amendments.)

{¶20} As to the 2006 Dormant Mineral Act, Appellants argue the notice of abandonment should not have been served by publication without explaining why service could not have been made by certified mail. *See* R.C. 5301.56(E)(1) (service of notice of abandonment shall be made by certified mail to each holder or each holder's successors or assignees; service can proceed by publication if certified mail service cannot be made on any holder). The complaint said notice of abandonment would be served by certified mail on those heirs listed for whom the plaintiffs had addresses. The complaint demonstrated Appellants were discovered through searches of probate records. The complaint then said notice would also be served by publication. Appellants disputed service by certified mail occurred. Appellees point us to return receipts showing notice of abandonment was served by certified mail on the defendants. However, this evidence is an attachment to Appellees' brief on appeal. Items cannot be added to the record for the first time on appeal. *State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978).

{¶21} At the time the trial court was ruling, there was an issue as to whether Appellants were served with the notice of abandonment by certified mail or why certified mail could not be accomplished on them requiring notice by publication. The trial court apparently believed this issue was irrelevant because it found Appellants

were not entitled to file a claim to preserve (and therefore not entitled to notice). Arguments surrounding the efforts at service of the notice of abandonment can become moot after a claim to preserve is timely filed. *See Dodd v. Croskey*, 7th Dist. No. 12 HA 6, 2013-Ohio-4257, ¶ 59. Here, a timely claim to preserve was recorded under R.C. 5301.56(C)(1) and (H)(1)(a). As Appellants point out, a preservation claim filed by one mineral interest holder is deemed to be a preservation for all of the mineral interest holders. *Dodd*, 143 Ohio St.3d 293 at ¶ 28, citing R.C. 5301.56(C)(2).

{¶22} This leads to the trial court's conclusion Appellants and Washington Trust Bank as Trustee of the Trust of John D. Kirk could not file a valid claim to preserve. Appellants note Black's Law Dictionary defines a successor as the person who takes over the role, rights, or obligations of another. Appellants conclude an heir, whether by statute or by will, is a successor to a holder. It is suggested the trial court, at Appellees' behest, improperly blended the analysis for whether there was a qualifying title transaction under the Dormant Mineral Act with a determination as to who can file a post-notice claim to preserve. The trial court concluded a person filing the claim to preserve cannot be a holder, or successor or assignee of a holder, unless a title transaction was recorded in the recorder's office.

{¶23} We note the statute does not connect the concept of who is a holder with the savings event requirement of recording a title transaction in the recorder's office. In fact, a claim to preserve is a different type of savings event. *Compare* R.C. 5301.56(B)(3)(a) *with* (B)(3)(e). Additionally, a claim to preserve can be employed (as it was here) as a post-notice-of-abandonment event to defeat the attempt to have minerals declared abandoned under the 2006 Dormant Mineral Act. *See* R.C. 5301.56(B)(3)(e),(H)(1)(a); *Dodd*, 143 Ohio St.3d 293 at ¶ 30.

{¶24} This claim to preserve can be filed by "the holder or the holder's successors or assignees" in accordance with division (C). R.C. 5301.56(H)(1)(a). Division (C) provides a claim to preserve a mineral interest from being deemed abandoned "may be filed for record by its holder." R.C. 5301.56(C)(1). *See also* R.C. 5301.56(E)(1) (service of notice of abandonment shall be made by certified mail

"to each holder or each holder's successors or assignees"; service can be made by publication if certified mail service cannot be "completed to any holder").

**{¶25}** "Holder" is specifically defined in R.C. 5301.56(A)(1) as: "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." There is no mention of a "living holder," as the term was used by the trial court. Notably, a successor or assignee of a holder can become a "record holder." Yet, a holder is expressly defined to include more than merely the "record holder." In *Dodd*, this court held: "holder would include any heirs or assigns of the [grantor who severed and reserved the minerals]." *Dodd*, 7th Dist. No. 12 HA 6 at ¶ 54. In *Tribett,* an argument was made that heirs were not holders, successors, or assigns and thus an heir's preservation claim had no legal effect. *Tribett*, 7th Dist. No. 13BE 22 at ¶ 64 (reversed on other grounds due to *Corban*). Like the plaintiffs argue now, the Tribetts argued the statute did not use the word "heirs." *See id.* at ¶ 66. We concluded an heir can be a holder as his rights can "succeed to the rights of" the record holder. *Id.* at ¶ 67-68, citing Black's Law Dictionary 740 (8th Ed.2004) .

**{¶26}** A person does not lose an inherited mineral interest under probate law merely because it was not listed during an estate administration; they may lose it due to other pertinent facts under a law such as the 2006 Dormant Mineral Act (via time lapse without a savings event and a failure to file a timely claim to preserve or affidavit identifying a savings event). However, if a person to whom the mineral interest should have been transferred during an estate administration (or their representative, such as an heir's trustee) files a timely post-notice-of-abandonment claim to preserve, then the person would not lose the mineral interest under the 2006 Dormant Mineral Act. Whether the mineral interest was inherited by a person who filed a claim to preserve is a different issue than whether the mineral interest was subject to a recorded title transaction. As the Supreme Court observed: "Presumably, the surface owner can challenge the accuracy of the mineral-interest holder's claim. But that is outside the operation of the Dormant Mineral Act, which addresses only whether a surface owner can employ the act's provisions to deem the

mineral rights abandoned, reunite the mineral rights with the surface rights, and vest them in the surface owner." *Dodd*, 143 Ohio St.3d 293 at fn. 4.

**{¶27}** The trial court rendered judgment on the pleadings. A motion for a judgment on the pleadings under Civ.R. 12(C) presents only questions of law. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166, 297 N.E.2d 113 (1973). Appellants are entitled to have all the material allegations, and all reasonable inferences to be drawn therefrom, construed in their favor. *See id.* at 165-166. Upon construing the allegations in the pleadings in the light most favorable to Appellants, the trial court could not grant a Civ.R. 12(C) judgment on the pleadings unless Appellants could prove no set of facts to defend and support their position. *See State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 550, 664 N.E.2d 931 (1996). The court was restricted to viewing the pleadings, but properly incorporated attachments can be considered. *See, e.g., id.* at fn. 1 ("Incorporated material may be considered as part of the complaint."). *See also* Civ.R. 10(C) ("A copy of any written instrument attached to a pleading is a part of the pleading for all purposes.").

**{¶28}** The trial court ruled as a matter of law Appellants were not entitled to file a post-notice claim to preserve because no title transaction had been recorded. However, this is not the standard to determine who is eligible to file a claim to preserve. The judgment on the pleadings was improper as the pleadings and attachments fail to show, as a matter of law, John D. Kirk (and John W. Kirk's other heirs listed in the claim to preserve) did not inherit the right of John W. Kirk (a record holder) in the mineral interest. To the contrary, some set of facts could demonstrate a claim to preserve was filed by a holder, which includes a successor of a holder (whether on record or not). *See* R.C. 5301.56(A)(1) ("Holder" means the "record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder * * *"). *See also* R.C. 5301.56(H)(1)(a). The trial court's judgment on this alternative basis cannot be upheld based upon the pleadings.

<u>MARKETABLE TITLE ACT</u>

**{¶29}** In 1961, Ohio enacted the Marketable Title Act in R.C. 5301.47 through R.C. 5301.56 in order to extinguish interests and claims in land existing before the

root of title. *Corban*, __ Ohio St.3d __, 2016-Ohio-5796 at ¶ 17. Pursuant to R.C. 5301.50, "record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." The statute further provides: "All such interests, claims, or charges, however denominated * * * are hereby declared to be null and void." R.C. 5301.50. "The Marketable Title Act does not differentiate between different types of interests. It applies to *all* interests." *Pollock v. Mooney*, 7th Dist. No. 13 MO 9, 2014-Ohio-4435, ¶ 21 (applying the Marketable Title Act to extinguish a royalty interest). *See also Covert v. Koontz*, 7th Dist. No. 13 MO 8, 2015-Ohio-228, ¶ 12 (extinguishment of oil and gas royalty interest due to unbroken 40-year period after the root of title).[1]

{¶30} A person who has an unbroken chain of title of record to any interest in land for forty years or more has a marketable record title to such interest. R.C. 5301.48. A marketable record title is defined as "a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 5301.50 of the Revised Code." R.C. 5301.47(A). Root of title is defined as "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). The effective date of the root of title is the date it was recorded. *Id.*

{¶31} The record marketable title is subject to various listed interests and exceptions. R.C. 5301.49; R.C. 5301.53. For instance, the record marketable title is subject to "[a]ny interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started * * *." R.C. 5301.49(D) ("provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the

---

[1] *See also* Carr, *A Practitioner's Guide to the Ohio Marketable Title Act*, 7 Appalachian Nat. Resources L.J. 25 (2011-2013).

time of the recording by the operation of section 5301.50 of the Revised Code"). Additionally, a claim or notice to preserve can be made "by filing for record during the forty-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable, a notice in compliance with section 5301.52 of the Revised Code. R.C. 5301.51(A). This preservation notice must be filed for record in the office of the county recorder. R.C. 5301.52(B). *Compare* R.C. 5301.47(B),(C) (includes filing in the probate court as recording when defining a title transaction). "Sections R.C. 5301.47 to 5301.56, inclusive, of the Revised Code, shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title as described in section 5301.48 of the Revised Code, subject only to such limitations as appear in section 5301.49 of the Revised Code." R.C. 5301.55.

{¶32} The original version of the Marketable Title Act did not extinguish mineral interests as it expressly listed minerals in the exceptions under R.C. 5301.53. *Corban*, __ Ohio St.3d __, 2016-Ohio-5796 at ¶ 18, citing Former R.C. 5301.53(E) (the act did not "bar or extinguish any right, title, estate, or interest in and to minerals, and any mining or other rights appurtenant thereto or exercisable in connection therewith"). In 1973, the Marketable Title Act was amended with a stated purpose "to enable property owners to clear their titles of disused mineral interests." *Corban*, __ Ohio St.3d __, 2016-Ohio-5796 at ¶ 18. Mineral interests, except coal, were removed from the statutory list of exceptions. *Id.*, citing Former R.C. 5301.53(E). Coal remains excluded from the act's coverage. *See, e.g.,* R.C. 5301.53. The 1973 amendment also provided a grace period for the expiration of the forty-year period, extending it until "after December 31, 1976." Former R.C. 5301.56.

{¶33} In 1989, the Marketable Title Act was amended by the enactment of the Dormant Mineral Act contained in R.C. 5301.56, which provided "a method for the termination of dormant mineral interests and the vesting of their title in surface owners, in the absence of certain occurrences within the preceding twenty years." *Corban*, __ Ohio St.3d __, 2016-Ohio-5796 at ¶ 19. As aforestated, the 1989

Dormant Mineral Act did not provide for automatic extinguishment of mineral interests upon the twenty-year period of inactivity. *Id.* at ¶ 26-28.

{¶34} In coming to this conclusion, the Ohio Supreme Court compared the language of the Dormant Mineral Act with the language contained in the remainder of the Marketable Title Act. The Court emphasized the Dormant Mineral Act merely said the mineral interest "shall be deemed abandoned and vested" and did not say the mineral interest was "extinguished" if no savings events occurred in the preceding twenty years; nor did it say the mineral interest became "null and void." *Corban*, __ Ohio St.3d __, 2016-Ohio-5796 at ¶ 21. By way of contrast, the terms "extinguish" and "null and void" are used in the Marketable Title Act. *Id.*, citing R.C. 5301.47(A) and R.C. 5301.50. Accordingly, when interests are "extinguish[ed]" due to the forty-year unbroken chain of title defined in the Marketable Title, the interests are automatically "null and void." *See id.* They cannot be revived after extinguishment. *See* R.C. 5301.49(D) (a recording after the effective date of the root of title shall not revive or give validity to any interest which has been extinguished by R.C. 5301.50 prior to the time of recording).

{¶35} On appeal, Appellees point out they alternatively pled their right to the mineral interest was vested in an unbroken chain of title for more than forty years with a root deed recorded on May 11, 1967. They urge this court to affirm the trial court's judgment on this alternative claim. However, we refuse to do so.

{¶36} First, we note the context of the trial court statements about Appellees' interest being vested in unbroken chain of title with a root deed of title recorded on May 11, 1967, more than forty (40) years ago. Upon stating this, the court concluded *within the same sentence* that the minerals vested in the surface owners on March 23, 1992. This date corresponds to the 1989 Dormant Mineral Act, which had a three-year grace period from its March 22, 1989 date of enactment. The date cited by the trial court would have no relevance under the Marketable Title Act's forty-year chain. The court specifically cited R.C. 5301.56 (the Dormant Mineral Act) to support its holding. In fact, the court indicated within the first sentence mentioning the root deed, "[t]here are no factual disputes pertaining to the facts set forth in Plaintiffs' Second Claim for Relief * * *." The second claim involved the Dormant Mineral Act.

(Appellees' Marketable Title Act claim of extinguishment was the third claim in the complaint.)

{¶37} The trial court's statements, relied upon by Appellees to suggest the trial court issued an alternative holding of extinguishment under R.C. 5301.50 of the Marketable Title Act, were inextricably enmeshed with its holding on the 1989 Dormant Mineral Act. Under all of the circumstances of this case, consideration must also be given to the change in the governing case law since the trial court's decision. As set forth supra, since the trial court's rulings in this case, Ohio Supreme Court decisions eliminated the 1989 Dormant Mineral Act from the equation.

{¶38} Furthermore, the trial court directly connected a conclusion regarding the 1967 root of title and the passing of forty years with the conclusion that a title transaction was not filed of record in the office of the county recorder. However, this is not the only option in dealing with extinguishment under the Marketable Title Act. In general, a title transaction is defined as "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed, or mortgage." R.C. 5301.47(F). "Record" is defined as including "probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situated". R.C. 5301.47(B). "'Recording' when applied to the official public records of the probate or other court, includes filing." R.C. 5301.47(C). This statute provides these definitions apply to "section 5301.47 to 5301.56, inclusive"; R.C. 5301.56 is the Dormant Mineral Act.

{¶39} Under the Dormant Mineral Act, a savings event can occur when "[t]he mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located." R.C. 5301.56(B)(3)(a). Therefore, the Dormant Mineral Act adds an additional requirement to the general title transaction definition: recording in the county recorder's office. The trial court concluded no recording occurred in the county recorder's office, but the Marketable Title Act's extinguishment provisions do not depend on the title transaction being filed in the recorder's office. Recording, in

the context of R.C. 5301.49(D), includes filing in the probate court. R.C. 5301.47(B),(C). Appellees presented an argument regarding whether there was a title transaction under the Marketable Title Act's extinguishment provision; however, the question did not appear to be clearly answered by the trial court's decision.

{¶40} In any event, a judgment on the pleadings was not appropriate. We cannot answer a specific legal question, on whether title passed by will for instance, when the facts defining the scope of the legal issue have not been fully established. Whether a transaction affecting title to any interest in land occurred in a manner that could be considered filing with the probate court under R.C. 5301.47 has not yet been ascertained. We note the will of John W. Kirk is relied upon by the parties, but it is not a part of the pleadings. Appellees attached multiple documents to the complaint, and more documents to the reply to the counterclaim and the motion for judgment on the pleadings. Some do not qualify as written instruments under Civ.R. 10(C). This stage of the case is not conducive to these types of documentary evidence. It is noted Appellees did not attach the 1967 deed which is said to be their root of title. This is a key instrument in a Marketable Title Act case.

{¶41} In addition, Appellees apparently construed Appellants' answer as admitting key facts. Yet, the denials in the answer were overlooked. For instance, Appellants specifically denied the allegation in ¶ 30 of the complaint that the mineral interest was terminated by operation of law due to more than 40 years of inactivity under the Marketable Title Act. Appellants also denied the allegations under the third claim in ¶ 55, 57, and 59 of the complaint. Appellants also denied ¶ 4 of the complaint, which said there is no transfer of the mineral interest by John W. Kirk of record in Belmont County. Although they added an argument to their denial (about residual property qualifying as a title transaction), this should not be construed as an admission or limitation on the ability to introduce other evidence as the case progresses.

{¶42} Various issues were presented by Appellees and by Appellants' denials which require more evidence than was properly considered in ruling on the motion for judgment on the pleadings. Such evidence could be presented via summary judgment material after discovery and in compliance with the intervening decisions of

the Ohio Supreme Court. *See* Civ.R. 56(C). In sum, the trial court erred in granting judgment on the pleadings.

{¶43} For the foregoing reasons, the trial court's judgment is reversed, and the case is remanded for further proceedings.

Donofrio, J., concurs.

Waite, J., concurs.