[Cite as *Blackstone v. Moore*, 2017-Ohio-5704.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DAVID M. BLACKSTONE, et al. | ) | CASE NO. 14 MO 0001 |
| | ) | |
| PLAINTIFFS-APPELLEES | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SUSAN E. MOORE, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Monroe County, Ohio Case No. 2012-166

JUDGMENT:      Reversed.

APPEARANCES:
For David & Nicolyn Blackstone:      Atty. James S. Huggins
Atty. Daniel P. Corcoran
Atty. Kristopher O. Justice
Theisen Brock, L.P.A.
424 Second Street
Marietta, Ohio 45750

For Susan Moore, Carolyn Kohler,      Atty. Mark W. Stubbins
Rebecca Englehart and Charles Yontz:      Stubbins, Watson & Bryan Co., LPA
59 North Fourth Street
P.O. Box 0488
Zanesville, Ohio 43702-0488

For J.K. Larrick and Ila Carpenter:      Atty. Stephanie Mitchell
Tribbie, Scott, Plummer & Padden
139 West Eighth Street
P.O. Box 640
Cambridge, Ohio 43725

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: June 29, 2017

WAITE, J.

{¶1} Susan Moore, Rebecca Englehart, Carolyn Kohler, and Charles Franklin Yontz (collectively referred to as "Appellants") appeal a January 22, 2014 Monroe County Common Pleas decision to grant summary judgment in favor of Appellees David M. and Nicolyn Blackstone (collectively referred to as the "Blackstones"). Appellants contest the trial court's finding that their interests were abandoned pursuant to the 1989 Dormant Mineral Act ("DMA") and the Marketable Title Act ("MTA"). Pursuant to *Corban v. Chesapeake Exploration, L.L.C.,* __ Ohio St.3d __, 2016-Ohio-5796, __ N.E.3d __, Appellants' arguments have merit and the judgment of the trial court is reversed. Judgment is entered in favor of Appellants.

Factual and Procedural History

{¶2} This appeal concerns the ownership of mineral rights beneath 60 acres of land located in Seneca Township, Monroe County. On April 3, 1915, Nick and Flora Kuhn conveyed the surface rights to W. D. Brown but reserved a royalty interest through the following language: "Except Nick Kuhn and Flora Kuhn, their heirs and assigns reserve one half interest in oil and gas royalty in the above described Sixty (60) acres." (4/3/15 Kuhn Deed.) The deed was recorded on April 10, 1915. The surface rights were conveyed two additional times, once in 1926 and once in 1948. Both deeds included the Kuhn reservation. On March 26, 1918, the Kuhns entered into an oil and gas lease with Ohio Fuel Supply Co. The lease was recorded on October 30, 1930.

{¶3} In 1969, the surface rights were conveyed to Co-Appellee David Blackstone. The deed was recorded on July 30, 1969. In 1976, Blackstone entered

into an oil and gas lease with Chief Petroleum Inc. which included the 60 acres obtained from the Kuhns. In 1978 or 1979, Gilbert Yontz, a Kuhn heir, preliminarily agreed to sell the Kuhn one-half royalty interest to Blackstone for $1,000. However, after discussing the sale with the remaining Kuhn heirs, Yontz raised the price to $2,500. Blackstone declined the offer. On January 8, 2001, Blackstone's deed to the surface rights was transferred into a joint and survivorship deed with his wife, Nicolyn Blackstone. The deed was recorded on March 20, 2001. On February 10, 2012, the Blackstones entered into an oil and gas lease with Antero Resources Appalachian Corporation. The lease involved 246 acres, again including the 60 acres obtained from the Kuhns. The lease was recorded on February 13, 2012.

{¶4} On May 9, 2012, the Blackstones recorded an affidavit of intent to declare the mineral interests abandoned. On June 4, 2012, the Blackstones filed a complaint against the following: Appellants (who are Kuhn Heirs), Nick Kuhn, Flora Kuhn, Leonna Wheatley, Tharcella Larrick Smith, Luella Yontz, Mary Curran, Gilbert Yontz, Opal M. Yontz, Mahala Breaden, Allie Pryor, Howard Pryor, Meredith Edwards, Jack Edwards, Barbara Edwards, Elwood Edwards, and Miles Edwards. The complaint sought declaratory judgment and quiet title. On June 29, 2012, Appellants filed an answer, counterclaim, and cross-claim. In the cross-claim, Appellants requested dismissal of the complaint as to defendants Leona Wheatley, Tharcella Larrick Smith, Mary Curran, Nick Kuhn, and Flora Kuhn, because they are deceased. Shortly thereafter, on July 6, 2012, Appellants filed a claim to preserve mineral interests pursuant to R.C. 5301.56(C), (H).

**{¶5}** On July 31, 2012, the Blackstones filed an answer to the counterclaim. Two heirs of Tharcella Larrick Smith also filed an answer to the cross-claim and were involved in the trial court proceedings, however, they are not parties to this appeal. The remaining parties failed to respond. Accordingly, on September 17, 2012, Appellants filed a motion for partial default judgment of the cross-claim against the parties who failed to respond. On November 19, 2012, the trial court granted the motion for default judgment against the following: Nick Kuhn, Flora Kuhn, Leonna Wheatley, Tharcella Larrick Smith, Luella Yontz, Mary Curran, Gilbert Yontz, Opal M. Yontz, Mahala Breaden, Allie Pryor, Howard Pryor, Meredith Edwards, Jack Edwards, Barbara Edwards, Elwood Edwards, and Miles Edwards.

**{¶6}** Relevant to this appeal, as the case proceeded the trial court set the following deadlines: February 28, 2013 for discovery and March 29, 2013 for filing dispositive motions. On March 25, 2013, the Blackstones filed a motion to amend their complaint to add a claim regarding the MTA. On April 8, 2013, the trial court extended the discovery deadline to April 30, 2013 and the dispositive motion filing deadline to May 31, 2013 in order to allow the parties to proceed with a deposition. On April 8, 2013, the court granted the Blackstones' motion for leave to file an amended complaint, which was then filed on April 11, 2013.

**{¶7}** The parties filed competing motions for summary judgment. On January 22, 2014, the trial court found that Appellants' interests were abandoned pursuant to both the 1989 DMA and the MTA, and granted the Blackstones' motion for summary judgment. This timely appeal followed.

## Summary Judgment

**{¶8}** An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (1995).

**{¶9}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor.

*Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶10}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED BY NOT DETERMINING WHETHER APPELLANTS' INTEREST WAS A "PERPETUAL NON PARTICIPATING ROYALTY" OR A FEE INTEREST IN THE MINERALS.

**{¶11}** Appellants contend that a royalty interest is more akin to personal property, or a contractual right, rather than an interest in the minerals themselves. As such, Appellants argue that royalty interests are not subject to either the DMA or the MTA. In response, the Blackstones contend that the broad scope of the MTA encompasses all interests, including royalty interests.

**{¶12}** We have recently held that "[t]he Marketable Title Act does not differentiate between different types of interests. It applies to all interests." (Emphasis deleted.) *Warner v. Palmer*, 7th Dist. No. 14 BE 0038, 2017-Ohio-1080, ¶ 29, citing *Pollock v. Mooney*, 7th Dist. No. 13 MO 9, 2014-Ohio-4435, ¶ 21; *Covert*

*v. Koontz*, 7th Dist. No. 13 MO 8, 2015-Ohio-228. In *Pollock,* we held that a royalty interest is subject to the MTA. *Id.* at ¶ 17. In another recent case, we held that a royalty interest is subject to abandonment pursuant to the DMA. *DeVitis v. Draper,* 7th Dist. No. 13 MO 0017, 2017-Ohio-1136, ¶ 19.

**{¶13}** In accordance with *Warner, Pollock,* and *DeVitis,* Appellants' first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN APPLYING THE 1989 VERSION OF THE DORMANT MINERAL ACT CAUSING AUTOMATIC ABANDONMENT OF APPELLANTS' MINERAL INTEREST WHEN (1) AT THE TIME OF FILING THE LAWSUIT THE CURRENT VERSION OF OHIO REVISED CODE §5301.56 WAS IN EFFECT PREVENTING APPLICATION OF THE FORMER STATUTE, AND/OR (2) THE TAKING OF APPELLANTS' MINERAL INTEREST VIA AN AUTOMATIC ABANDONMENT WITHOUT NOTICE CONSTITUTES AN UNCONSTITUTIONAL TAKING OF PROPERTY.

**{¶14}** We note that the briefing schedule in this appeal was completed prior to the Ohio Supreme Court's recent DMA opinions. No supplemental briefing has been filed by either party.

**{¶15}** Appellants argue that the 2006 version of the DMA applies in this matter as Appellees' complaint was filed after its effective date. As such, Appellants

contend that the trial court erroneously applied the 1989 DMA and found that surface and mineral interests had automatically reunited.

**{¶16}** In response, the Blackstones argue that the 1989 DMA automatically reunited the mineral interests and surface rights by operation of law in the absence of a savings event within the preceding twenty years. The Blackstones based their argument on their belief that the 2006 DMA applies prospectively rather than retroactively. However, at oral argument, the Blackstones conceded that *Corban* has resolved this issue.

> [A]s of June 30, 2006, any surface holder seeking to claim dormant mineral rights and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Stalder v. Bucher*, 7th Dist. No. 14 MO 0010, 2017-Ohio-725, ¶ 10, quoting *Corban*, *supra*, ¶ 31.

**{¶17}** The *Corban* Court further held that the 1989 DMA was not self-executing and did not serve to automatically transfer ownership rights of dormant minerals by operation of law, thus any attempt to declare mineral interests abandoned after June 30, 2006 must comply with the notice requirements of the 2006 DMA. *Id.*, citing *Corban* at ¶ 28. Because the Blackstones filed their complaint

on June 4, 2012, the 2006 DMA controls. As such, the trial court improperly relied on the 1989 version of the Act.

**{¶18}** Abandonment is precluded if the mineral interest holder files an affidavit to preserve his or her interests within sixty days of receiving the surface owner's notice of intent to declare those interests abandoned. *Dodd v. Croskey,* 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 37. Appellants filed an affidavit to preserve their interests within sixty days of receiving the Blackstones' notice and Appellants have preserved their interests pursuant to the 2006 DMA.

**{¶19}** Accordingly, Appellants' second assignment of error has merit and is sustained.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED IN ALLOWING APPELLEES TO AMEND THEIR COMPLAINT IMMEDIATELY PRIOR TO THE MOTION DEADLINE TO PERMIT A CLAIM UNDER THE MARKETABLE TITLE ACT.

**{¶20}** Pursuant to Civ.R. 15(A):

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written

consent or the court's leave. The court shall freely give leave when justice so requires. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within fourteen days after service of the amended pleading, whichever is later.

**{¶21}** Civ.R. 15(A) allows for liberal amendment, but a motion should not be granted if the record supports a finding of bad faith, undue delay, or undue prejudice to the opposing party. *Turner v. Cent. Local School Dist.,* 85 Ohio St.3d 95, 99, 706 N.E.2d 1261 (1999). A trial court's ruling on a motion to amend a complaint is reviewed for an abuse of discretion. *Porter v. Probst,* 7th Dist. No. 13 BE 36, 2014-Ohio-3789, 18 N.E.3d 824, ¶ 13, citing *Turner,* 85 Ohio St.3d at 99.

**{¶22}** Appellants contend that the trial court abused its discretion by allowing the Blackstones to add a claim pursuant to the MTA nine months after the original complaint was filed. Appellants argue that the Blackstones' motion for leave to file an amended complaint was untimely because it was filed after the initial discovery deadline had passed and mere days before the dispositive motion filing deadline. Appellants also argue that they suffered prejudice because their interests were extinguished on the MTA claim that was added to the complaint.

**{¶23}** In response, the Blackstones argue that the question of whether the DMA and MTA could serve as alternative claims had been unanswered at the time the original complaint was filed. The Blackstones assert that they filed the motion for leave to amend the complaint following two trial court decisions which determined

that the DMA and MTA could serve as alternative claims. They urge that they filed the motion as soon as possible after learning that Appellants would not consent to the amendment. The Blackstones also clarify the case schedule by explaining that the discovery and dispositive motion deadlines had been extended to allow the parties to conduct previously scheduled depositions.

{¶24} While there is no reason to suggest that a claim pursuant to the MTA was unavailable to the Blackstones at the time the complaint was filed, the record is devoid of any evidence demonstrating bad faith, undue delay, or undue prejudice. Appellants contend that because the discovery and dispositive motion deadlines had already passed, this alone provides evidence of prejudice. The Blackstones filed a motion for leave on March 25, 2013. While the original discovery deadline had passed and the dispositive motion deadline was mere days away, the trial court extended these deadlines in order to allow the parties to proceed with an earlier-scheduled deposition. The court extended the discovery deadline to April 30, 2013 and the dispositive motion deadline to May 31, 2013. The court later extended the dispositive motion deadline to November 13, 2013. Hence, the Blackstones' motion to amend had no affect on the case schedule.

{¶25} Appellants also argue that prejudice is evident from the fact that their interests were extinguished once the MTA was applied. However, the mere fact that the Blackstones succeeded on this claim has no bearing on whether the leave to file an amended complaint should be granted.

**{¶26}** As the parties had previously scheduled a disposition that required the discovery and dispositive motions deadlines to be extended prior to the filing of the motion for leave, Appellants were not prejudiced in terms of scheduling in this matter. The record is devoid of any additional evidence demonstrating prejudice by the request to file an amended complaint.

**{¶27}** Accordingly, Appellants' third assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT ALSO ERRED IN EXTINGUISHING APPELLANTS' MINERAL INTEREST UNDER THE MARKETABLE TITLE ACT.

**{¶28}** Appellants argue that the trial court erroneously extinguished their rights pursuant to the MTA for three reasons. First, Appellants contend that the Blackstone deed contained a specific reference to the Kuhn reservation, as it stated the name of the person reserving the interest and the nature of the interest. Second, Appellants argue that actual notice may bar application of the MTA. Appellants argue that the Blackstones had actual knowledge of the Kuhn reservation, having previously negotiated with the Kuhn heirs in an attempt to purchase their royalty interest. Third, Appellants argue that they had filed a preservation claim.

**{¶29}** In response, the Blackstones argue that reference to an interest contained in a deed must be specific enough to allow a title examiner to locate the reservation deed without using the indexes. The Blackstones contend that it is

impossible to find the deed containing the reservation without using the indexes, because the reference did not include the volume or page number. They also argue that there is no legal authority to suggest that actual or constructive knowledge prevents extinguishment under the MTA and that extinguishment is based on record title. Finally, the Blackstones argue that the claim of preservation was filed almost three years after Appellants' interests were already extinguished.

{¶30} The purpose of the MTA is "to extinguish interests and claims in land that existed prior to the root of title with 'the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title.' " *Corban,* at ¶ 17. Pursuant to R.C. 5301.50, "record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." "A person who has an unbroken chain of title of record to any interest in land for forty years or more has a marketable record title to such interest." *Warner*, *supra*, at ¶ 30.

{¶31} R.C. 5301.47(A) defines marketable record title as "a title of record, as indicated in Section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in Section 5301.50 of the Revised Code." "Root of title" is defined as "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the

marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E).

{¶32} Record marketable title is subject to several interests and exceptions found within R.C. 5301.49 and R.C. 5301.53. The crux of this case centers on R.C. 5301.49(A), which provides that:

Such record marketable title shall be subject to:

(A) All interests and defects which are inherent in the muniments of which such chain of record title is formed; provided that a general reference in such muniments, or any of them, to easements, use restrictions, or other interests created prior to the root of title shall not be sufficient to preserve them, unless specific identification be made therein of a recorded title transaction which creates such easement, use restriction, or other interest; and provided that possibilities of reverter, and rights of entry or powers of termination for breach of condition subsequent, which interests are inherent in the muniments of which such chain of record title is formed and which have existed for forty years or more, shall be preserved and kept effective only in the manner provided in section 5301.51 of the Revised Code.

{¶33} The reference at issue, here, stated: "Excepting the one-half interest in oil and gas royalty previously excepted by Nick Kuhn, their heirs and assigns in the above described sixty acres." (7/30/69 Deed.) Appellants argue that the reference is

sufficiently specific, because it names the person who reserved the interest and the nature of the interest. In response, the Blackstones argue that the reference fails to specify the volume and page number of the reserving deed, making this a general reference pursuant to *Duvall v. Hibbs*, 5th Dist. No. CA-709, 1983 WL 6483 (June 8, 1983).

**{¶34}** In *Duvall*, the pertinent language stated that the conveyance was "subject to a deed made to R.S. Hibbs for one-half of said royalty making the amount of royalty for all oil pumped from the wells on said lands after March 1, 1908,..." *Id.* at *1. In determining whether this reference was specific or general, the Fifth District cited an earlier decision of this Court, *Landefeld v. Keyes,* 7th Dist. No. 548, 1982 WL 6146 (June 17, 1982). The Fifth District started with the premise that in *Landefeld* we found the following language amounted to a specific reference: "excepting the coal and oil and gas rights as reserved by G.E. Ketterer and wife in deed to Geo. J. Egger, dated March 26, 1919, in Deed Book No. 81, pages 194-95, Monroe County, Ohio." *Duvall* at *2. However, while we did hold that this reference was "specific," we were not called on to reach the issue of whether this reference complied with R.C. 5301.49(A), because it pertained to a section of land that was not involved in the matter before us in *Landefeld*. *Id.* at *2. Nonetheless, the Fifth District utilized the *Landefeld* decision to determine that R.C. 5301.49(A) "requires sufficient reference so that a title examiner may locate the prior conveyance by going directly to the identified conveyance record in the recorder's office without checking conveyance

indexes." *Duvall* at *2. The Fifth District is the only appellate district that follows this strict rule.

**{¶35}** The Fourth District addressed whether a reference to a reservation was sufficiently specific pursuant to R.C. 5301.49(A) in *Patton v. Poston*, 4th Dist. No. 1141, 1983 WL 3171 (April 25, 1983). In *Patton*, the reference stated: "Excepting from all of the foregoing described real estate, all minerals and mining rights heretofore granted by the former owners of said real estate." (Emphasis deleted.) *Id.* at *4. The Fourth District held this reference was general, because it failed to include four essential pieces of information: the type of mineral rights created, the nature of the encumbrance (an estate profit, lease or easement), to whom the original interest was granted, and the instrument that created the interest. *Id.* at *5.

**{¶36}** More recently, the Eighth District reviewed the issue in *Pinkney v. Southwick Investments L.L.C.*, 8th Dist. Nos. 85074, 85075, 2005-Ohio-4167. In *Pinkney*, the deed stated that the title was "free from all incumbrances [sic] whatsoever except taxes and assessments, general and specific, respread assessments, conditions, reservations and limitations of record, building and use restrictions of record, and zoning or other ordinances of the City of Shaker Heights, if any there be * * *." *Id.* at ¶ 48. The Court held that the language failed to create a specific reference, as it did not identify the recorded title transaction that created the interest, nor refer to the nature of the encumbrance created. *Id.* at ¶ 50.

**{¶37}** In the present matter, the parties cite to *Toth v. Berks Title Ins. Co.*, 6 Ohio St.3d 338, 453 N.E.2d 639 (1983). While the *Toth* Court found that the

reference at issue in the case was specific, unfortunately, the actual language was not cited within its Opinion. Contrary to the Blackstones' assertion, the Supreme Court did not hold that a reference must include the volume and page number in order to be specific. The words "volume" and "page number" are found nowhere in *Toth.*

**{¶38}** We are persuaded by the analysis of the Fourth and Eighth Districts and adopt the *Patton* and *Pinkney* factors. We expressly reject the *Duvall* requirement. As such, when determining whether a reference is specific or general, we look to whether it included: (1) the type of mineral right created, (2) the nature of the encumbrance (an estate, profit, lease, or easement), (3) the original owner of the interest, and (4) whether it referenced the instrument creating the interest.

**{¶39}** This record demonstrates that in the matter before us, each of these factors were met. The reservation specified that the encumbrance created a royalty interest. The nature of the encumbrance is an oil and gas lease. Further, the reservation specified that the encumbrance was originally reserved by Nick Kuhn. While the reference did not provide the volume and page number of the reserving deed, it is readily apparent that the reserving deed was the Kuhn deed, which was in the Blackstones' chain of title. As such, the Kuhn reservation was specific pursuant to the requirements of R.C. 5301.49(A). Based on the above, the trial court erred when it decided that Appellants' interests were extinguished pursuant to the MTA and this decision is hereby reversed. Appellants' fourth assignment of error has merit and is sustained. Our decision renders Appellants' remaining arguments moot.

## Conclusion

**{¶40}** The trial court in this matter correctly determined that a royalty interest in minerals is subject to both the MTA and DMA. The record fails to show that the trial court abused its discretion in allowing the Blackstones to amend their complaint to include MTA claims. However, the trial court erroneously applied the 1989 version of the DMA instead of the 2006 version of the statute. The trial court also erred when it extinguished Appellants' interests pursuant to the MTA, because the reference to the reserving deed in this matter was sufficiently specific. Based on the above, summary judgment was improperly granted to Appellees and we hereby reverse the matter and enter judgment in favor of Appellants.

Donofrio, J., concurs.

Robb, P.J., concurs.